## PRUDENTIAL INSURANCE CO v HEATON

Ohio Appeals, 3rd Dist, Van Wert Co

No 137. Decided June 25, 1935

Doyle & Lewis, Toledo, and Blachley & Beard, Van Wert, for plaintiff.

Conn & Stroup, Van Wert, for defendant.

## OPINION

By GUERNSEY, J.

Upon the trial of the case, as shown by the transcript of the evidence, certain evidence offered by the plaintiff, consisting of statements of physicians who had been employed by and attended Finley M. Heaton, and the records of the hospitals where he had contracted for and received treatment, were excluded by the court under the privileged communications rule. The testimony of the physicians excluded consisted of statements relating to their diagnosis of the case and treatment of Heaton and of statements made to them by him as to the history of his physical condition. This testimony clearly comes within the privileged communications rule and was properly excluded. The hospital records as to his condition were also properly excluded under the privileged communications rule and for the further reason that such records are not public records and do not tend of themselves to establish the facts purported to be shown by them. They are at most only memoranda of facts which are not of themselves admissible but which might be used by a witness having knowledge of the facts shown, for the purpose of refreshing his recollection as to such facts.

The undisputed evidence shows that Finley M. Heaton had been employed for approximately six weeks in September and October, 1931, at Marion, Ohio, by The Western & Southern Life Insurance Com-

pany and in such employment was engaged in taking applications for insurance. That in the forepart of October, 1931, he was not able to work at said employment and became sick and was confined to his bed and his home for a period of at least six weeks, according to his wife's testimony. According to her testimony, he had chronic diarrhea and was generally debilitated and was confined most of the time to his bed. Mr. Stewart, superintendent of The Western & Southern Life Insurance Company office at Marion, Ohio, visited Heaton at his home during his illness and discussed it with Mr. and Mrs. Heaton. He advised them to get a doctor and suggested Dr. Starner. He testified that he visited the Heaton home where Heaton was confined, at frequent intervals during the period of such illness and that Heaton was suffering from bloody flux, was in possession of his mental faculties, knew that he was ill and knew generally his condition and that he was being treated by Dr. Starner.

Some time in January or February of 1932, the Heatons moved to Van Wert, Ohio. In March of 1932 Heaton entered the employ of The Western & Southern Life Insurance Company at Van Wert under Mr. Hogan, superintendent, who testified at the trial. He remained in the employ of the company until May 23, 1932, during which time he was actively on the job the first three or four weeks and then about the fifth or sixth week of his employment he became sick again. According to Mrs. Heaton he was ill with a recurrence of the same trouble which had confined him to his bed and home in the months of October and November of 1931, and Mrs. Heaton said that he was in bed two days. Mr. Hogan stated that he was sick two weeks and during that time he had called at Heaton's home several times and that when he was there Heaton was lying on the couch.

In December, 1932, Heaton called the Van Wert office of The Prudential Insurance Company over the telephone and stated that he was interested in securing life insurance, and Mr. Conley, an agent for that company, under Mr. Springer the superintendent, went out to Heaton's home and took the application on December 6, 1932, and on this application, the policy which was dated December 19, 1932, was issued. A photostatic copy of the application is attached to the policy sought to be cancelled. When the application was taken, agent Conley collected $3.50, the first monthly premium. The policy provides for a monthly premium of $3.50 payable on the delivery of the policy, and a like amount

on or before the 19th day of each month thereafter. $28.00 in premiums were paid prior to Heaton's death.

The local Van Wert agents of The Prudential Insurance Company, including the agent who took the application and delivered the policy, testified that they had no knowledge at the time of the taking of the application and delivery of the policy, that any of the statements made by Heaton in the application, were false. Representatives of The Prudential Insurance Company at the home office, testified by deposition to the effect that they did not have any knowledge of the falsity of the answers contained in the application, and that the answers were considered material and relied upon in issuing the policy, and if they had been answered truthfully or differently than they were answered, particularly with reference to the answer to question 24 relating to treatments by physicians, the policy would have been held up or not issued.

On May 24, 1933, Heaton was admitted as a patient to Van Wert County Hospital, and discharged May 30, 1933. On July 14, 1933, he was admitted to Mount Carmel Hospital, Columbus, Ohio, where he remained until his death on August 15, 1933. An operation was performed by Dr. Wells Teachnor of Columbus, Ohio. Mrs. Heaton testified that he died of cancer of the intestinal tract.

R. B. Stevens, the deputy sheriff to whom the summons was issued in this case, made his return showing personal service on the defendant. On the hearing of the motion to quash the service of summons, evidence was offered tending to prove that Stevens called at the store where the defendant was employed and inquired for her; that she was advised of his visit and of his official capacity; that she was engaged with a customer at the time, and with her knowledge and acquiescence Stevens laid the summons on the counter of the store near which she was working and that almost immediately after he left the store she picked up the summons and later on the same day took it to her attorney.

It is contended by the defendant: First, that there was no service of summons in this case according to law. Second, that the petition states neither a cause of action nor ground for relief. Third, That there is no evidence entitling the plaintiff to relief, and that the evidence is insufficient, under the rules of equity and §9391 GC, to entitle the plaintiff to any relief.

We will consider the questions in the order mentioned.

First. The purpose of a service of summons is to give notice to a party of the pendency of a case against him. In our opinion this purpose was fully accomplished under the service made in this case. Instead of being handed to the defendant personally the summons was placed on a counter, in her presence and with her acquiescence; she almost immediately took it in her own hands and delivered it to her attorney, so that every purpose that could have been served by delivery of the summons to her in her hands, was served by the delivery as made.

Second. The second contention of the defendant is based on the theory that plaintiff had an adequate remedy at law.

Prior to the insertion of incontestable clauses in insurance policies it was generally held that a defense for a fraud did not allow an insurer to go into court to ask for cancellation of a policy on the ground of fraud after the death of the insured because it had an adequate remedy at law in that it could avail itself of such defense in an action on the policy. It is almost universally held now since the case of Mutual Life Insurance Company v Hurni, 263 U. S., 167, that where such incontestable clauses appear in the policies and the date of the period of incontestability starts from the date of issue of the policy, such period during which the policy may be contested is not tolled by the death of the insured but continues running from the date of the issuance of the policy. And accordingly if a law action is not brought by the beneficiary within the contestable period, or if brought may be dismissed during such period, the insured has no adequate remedy at law and accordingly is entitled to ask a court of equity for cancellation for fraud or for failure of conditions precedent.

While the statutes of Ohio provide that a policy shall not be contestable two years after date of issue, such statute did not apply to the case at bar, as the period of incontestability provided by the policy did not exceed the two year period provided by the statute, and there being no conflict between the statutory provision and the provision of the policy, the provision of the policy as to the period of contestability governed the rights of the parties, and the insurance company was entitled, within the period of (in)contestability provided by the policy, to invoke the jurisdiction of a court of equity for cancellation for fraud or for failure of conditions precedent. The petition therefore states a cause of action and a ground for relief.

Third. The evidence in this case, as above set forth, shows that early in October and November, 1931, the insured was confined to his home in bed by cramps and diarrhea of the nature of bloody flux and that he suffered a recurrence of this ailment in February or later, 1932, which lasted for a period of from two days to a week or more, and that Dr. Starner of Marion, Ohio, attended and treated him in a professional capacity for such ailment during his illness in October and November of 1931, all prior to the making of his application for the policy and the issuance of the policy; and that subsequent to the making of the application and the issuance of the policy, which was in December, 1932, the insured during the month of May, 1933, was treated at the Van Wert County Hospital, and during the months of July and August, 1933, was a patient at and treated in Mount Carmel Hospital at Columbus, Ohio, where he was operated on, and that the cause of his death was cancer of the intestinal tract.

The evidence further shows that insured was at all times possessed of his mental faculties, knew of his physical condition and of the services rendered by Dr. Starner and of the treatment received by him.

As we are of the opinion that the answer made by the insured to Question 24 in the application, in its relation to the testimony offered, is decisive of this case, we will consider the evidence only in relation to that question and answer. The question referred to reads as follows:

"Has life proposed ever received treatment by a physician or at a dispensary hospital or sanitarium? If yes, state where, when and for what ailments. No."

In the case of Haddad v New York Life Insurance Company, decided by the Circuit Court of Appeals, Sixth District, June 28, 1930, and reported in 42 Federal, Second, page 651, a case involving the construction of §9391 GC, it was held:

"The false representation that no physician had been consulted for five years was, as a matter of law, material; its materiality was not even for a jury."

The decision in this case was followed and approved in the case of New York Life Insurance Company v Cohen et, Circuit Court of Appeals, Sixth District, April 8, 1932, in a case involving the construction of the same statute.

Upon an examination of both of the cases

mentioned it is apparent that the rule announced was based on the facts developed in evidence in each case, but applying the reasoning in the opinions in these cases, it appears that where the physical ailment from which the insured had suffered and for which he had received treatment from a physician within the time specified in the question relating thereto which comprehended the time in which he had received such treatment, is identical with or has a causal relation to the physical ailment causing the death of the insured, such answer is, as a matter of law, material and fraudulent.

In the case at bar the undisputed evidence shows that the insured, prior to the application for and issuance of the policy, suffered from a serious disease of the intestinal tract and not a mere indisposition, for which he was treated by a physician, and that in his answer to the question mentioned he stated that he had not received treatment by a physician. His answer being in the neagtive, he did not disclose where, when and for what illness he had been treated.

The evidence further shows that the insured died from a disease of the intestinal tract. While the disease from which he suffered prior to the making of the application and the issuance of the policy, was described as cramps and diarrhea and bloody flux, and the disease of which he is said to have died· is designated as cancer of the intestinal tract, both diseases were diseases of the intestinal tract, and without the aid of expert testimony as to the relationship of the diseases an inference arises that the diseases were identical or that there was a causal relation between the disease from which he first suffered and the disease causing his death.

The statement made by the insured in reply to question 24 in the application was, therefore, false as shown by the evidence, and material as a matter of law, and being a positive statement of fact falsely made with respect to a material matter, will, nothing else appearing in the evidence, be deemed to have been made wilfully and with intent to deceive.

New York Life Ins. Co. v Wortheimer, 272 Federal, 730, 734, 735. (D.C. N.D. of Ohio).

We therefore find that it is clearly proven by the evidence in this case that such answer was wilfully false, was fraudulently made, was material, and induced the company to issue the policy and that but for such answer the policy would not have been issued; and also that the agent or the company had no knowledge of the falsity or fraud of the answer; and that for the reasons mentioned plaintiff is entitled to have said policy cancelled.

Holding these views, the same judgment and decree will be entered as was entered in the Common Pleas Court.

KLINGER and CROW, JJ, concur.